**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

CHRISTOPHER BRYAN STEWART,

   Plaintiff,

  v.

EDWINA JOHNSON, et al.,

   Defendants.

CIVIL ACTION NO.: 5:18-cv-37

## <u>O R D E R</u>

This matter is before the Court on Plaintiff's Motion to Exclude an Opinion of

Defendants' Expert Witness Dr. Jiong Yan, doc. 80, and Defendants' Motion to Exclude in Part

Expert Witness Testimony, doc. 81.  The parties have fully briefed the issues.  Docs. 83, 84, 86,

88.  For the following reasons, the Court **GRANTS** Plaintiff's Motion to Exclude an Opinion of

Defendants' Expert Witness Dr. Jiong Yan.  Doc. 80.  Defendants are prohibited from having Dr.

Jiong Yan testify at trial.

Additionally, the Court **GRANTS as unopposed in part** and **DENIES in part**

Defendants' Motion to Exclude in Part Expert Witness Testimony.  Doc. 81.  Plaintiff's experts,

Dr. Diego Espinosa and Dr. Dilip Thomas, may testify generally on their treatment of Plaintiff

and opinions formed during the course of treatment.  Dr. Espinosa is expressly permitted to

testify that a choroidal rupture is generally caused by trauma, and Dr. Espinosa may testify about

his continued monitoring of Plaintiff's condition and the likelihood for further deterioration.

However, Dr. Espinosa and Dr. Thomas are both prohibited from testifying about

Plaintiff's alleged Post Traumatic Stress Disorder ("PTSD") and mental health issues.  Both

doctors are also prohibited from testifying about the date on which Plaintiff's injury occurred and

whether (or which) assault caused Plaintiff's injury.  Additionally, Dr. Thomas is prohibited from testifying Plaintiff's condition will worsen or deteriorate further.

## BACKGROUND

Plaintiff brings this action under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments, alleging Defendants failed to protect him from two assaults by other inmates in April 2016.  At the relevant time, Plaintiff was an inmate at Ware State Prison ("WSP") and in the custody of the Georgia Department of Corrections ("GDC"), and Defendants were employees of GDC working at WSP.

Plaintiff's claims involve him being attacked by other inmates on two different occasions. Plaintiff was first assaulted at WSP on April 20, 2016.  As a result of that assault, Plaintiff contends he suffered a right eye injury, resulting in lost central vision.  Plaintiff was assaulted again, five days later, on April 25, 2016, while he was asleep.  Plaintiff alleges he sustained a serious head injury in the second assault and was taken to the hospital for treatment.  As a result of these attacks, Plaintiff asserts he experienced psychological effects and suffered eye injuries.

Plaintiff has identified his treating physicians—Dr. Diego Espinosa and Dr. Dilip A. Thomas—as experts to testify on his eye injuries at trial.  Doc. 80 at 2; Doc. 81-1 at 1. Defendants retained their own expert, Dr. Jiong Yan, to provide testimony on Plaintiff's eye injuries.

Plaintiff argues Dr. Yan's opinions are unreliable under Daubert and should be excluded. Doc. 80.  Similarly, Defendants challenge Plaintiff's experts, arguing they should not be permitted to testify on Plaintiff's claimed PTSD, the cause of Plaintiff's eye injuries, or the potential or likelihood for future deterioration of Plaintiff's eye condition.  Doc. 81-1.

## DISCUSSION

### I.    Plaintiff's Challenge to Defendants' Expert Dr. Yan

Plaintiff brings a challenge to the opinions of Defendants' expert, Dr. Yan.  Doc. 80.

Defendants filed a Response, and Plaintiff filed a Reply.  Docs. 83, 88.  Dr. Yan was retained by

Defendants for purposes of this litigation, and she provided Defendants with an opinion on

Plaintiff's eye injuries.  Doc. 83 at 2.  Dr. Yan is a practicing ophthalmologist with a focus on

vitreo-retinal diseases and surgery.  Id.  Dr. Yan formed her opinions by reviewing Plaintiff's

medical records but has not treated or examined Plaintiff.  Id. at 3.

Dr. Yan, in her report, offers two opinions.  Dr. Yan opines Plaintiff's eye injury was not

the result of the first assault on April 20, 2016, and instead, resulted from the second assault, on

April 25, 2016.  Id. at 2 (citing Doc. 83-1).  Dr. Yan also opines Plaintiff's vision loss is unlikely

to progress beyond 20/70, as "the injury is self-limiting . . . and unlikely to progress beyond 6

months of the recovery period."  Id. at 3–4.  Plaintiff argues these opinions should be excluded,

as the opinions are unreliable, nothing more than *ipse dixit*, and unhelpful to the trier of fact.

Plaintiff highlights Dr. Yan's ultimate opinion is also inconsistent with the evidence in the case,

as Plaintiff's vision loss did, in fact, progress to 20/200.  Id. at 7.

Defendants oppose Plaintiff's Motion.  Doc. 83.  Defendants argue Dr. Yan's report and

the opinions contained therein are sufficiently reliable under the Federal Rules of Evidence and

Daubert.[1]  Doc. 83 at 3.  Specifically, Defendants argue Dr. Yan's report is based on her

experience and that experience was reliably applied because the opinions are supported by the

factual evidence in the record.  Id. at 4.

---

[1]    Defendants also assert Dr. Yan is qualified to testify on these issues and her report complies with
Federal Rule of Civil Procedure 26(a)(2)(B).  Doc. 81 at 1–3, 4.  However, Plaintiff has not challenged
Dr. Yan's qualifications or her report under the Federal Rules of Civil Procedure; thus, the Court will not
consider Defendants' arguments on these points.

## A.  Federal Rule of Evidence 702 and <u>Daubert</u>

The United States Supreme Court's holding in <u>Daubert v. Merrell Dow Pharmaceutical, Inc.</u>, 509 U.S. 579 (1993), and the text of Rule 702 require trial judges to serve as gatekeepers in determining the admissibility of expert testimony; however, any decision regarding admissibility is not a position on the strength or weight of the testimony.  Fed. R. Evid. 702; <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999).  In this Circuit, courts routinely look to three elements to determine if an expert is qualified under <u>Daubert</u> and Rule 702.  As the Eleventh Circuit Court of Appeals has stated, the elements for consideration are whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>United States v. Frazier</u>, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted).  "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate."  <u>Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.</u>, 326 F.3d 1333, 1341 (11th Cir. 2003).  The trial court has broad latitude in evaluating each of these three factors.

As to qualifications, an expert may be qualified "by knowledge, skill, experience, training, or education."  <u>Hendrix ex rel. G.P. v. Evenflo Co., Inc.</u>, 609 F.3d 1183, 1193 (11th Cir. 2010).  The expert need not have experience precisely mirroring the case at bar in order to be qualified.  <u>Maiz v. Virani</u>, 253 F.3d 641, 665 (11th Cir. 2001).  However, where an expert does have experience directly applicable to an issue at bar, experience alone may provide a sufficient foundation for expert testimony.  <u>Frazier</u>, 387 F.3d at 1261.

As to reliability, courts look, when possible, to: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.  Daubert, 509 U.S. at 593–94.  However, these factors are not exhaustive, and "a federal court should consider any additional factors that may advance its Rule 702 analysis."  Quiet Tech., 326 F.3d at 1341.  At all times in this flexible inquiry, the court's focus must be "solely on principles and methodology, not on the conclusions that they generate."  Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 988 (11th Cir. 2016) (citation omitted).

Finally, as to the third Daubert factor, expert testimony is likely to assist the trier of fact to the extent it "concern[s] matters beyond the understanding of the average lay person and logically advance[s] a material aspect of the proponent's case."  Kennedy v. Elec. Ins. Co., Case No. 4:18cv148, 2019 WL 2090776, at *5 (S.D. Ga. May 13, 2019) (citing Daubert, 509 U.S. at 591); Frazier, 387 F.3d at 1262–63.  Rule 702 permits experts to make conclusions based on competing versions of the facts, but those conclusions must still assist the trier of fact by explaining something that is "'beyond the understanding of the average lay person.'"  Jackson v. Catanzariti, No. 6:12-CV-113, 2019 WL 2098991, at *10 (S.D. Ga. May 14, 2019) (citing Frazier, 387 F.3d at 1262).  Expert testimony generally will not help the trier of fact "when it offers nothing more than what lawyers for the parties can argue in closing arguments."  Id. (quoting Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1111 (11th Cir. 2005)).  Such testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves."  Hibiscus Assocs. Ltd. v.

Bd. of Trs. of Policemen & Firemen Ret. Sys., 50 F.3d 908, 917 (11th Cir. 1995) (citations omitted).

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).  However, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of proffered evidence." Quiet Tech., 326 F.3d at 1341.  Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

### B. Defendants Fail to Establish Dr. Yan's Opinions are Based on Reliable Methodology

Plaintiff challenges Dr. Yan's opinions as based on an unreliable methodology.  Dr. Yan opines the second assault caused Plaintiff's eye injury and that Plaintiff's eye injury should not result in vision loss worse than 20/70 because it is "self-limiting."  Doc. 80-1.  Plaintiff asserts Dr. Yan's report fails to explain how her experience as an ophthalmologist led to her conclusions or opinions, why the experience was a sufficient basis for the opinion, or how the experience was reliably applied to the facts of this case.  Doc. 80 at 5–6.

Dr. Yan's report first lays out her qualifications as an expert in ophthalmology, which Plaintiff does not challenge at this time.  Doc. 80-1 at 1.  Dr. Yan then provides her opinions in this case, including that the injury was a result of the April 25, 2016 assault.  Dr. Yan also states which medical records support her findings and summarizes those records.  Id. at 2  The report concludes with a summary of her findings.  There, Dr. Yan states based on the medical records

from April 20 and April 25, 2016, each describing Plaintiff's eye injuries, Plaintiff's vision loss is most likely a result of the April 25, 2016 assault.  Id. at 3.

Defendants argue Dr. Yan's opinions are based on a reliable methodology because she is qualified to testify on the subject and state her experience and review of Plaintiff's medical records form the basis for her opinions and conclusions.  Doc. 83 at 3.  Importantly, Dr. Yan has not been deposed in the case.  Thus, the Court only considers what the parties have provided—Dr. Yan's report and her curriculum vitae.

Dr. Yan's experience in ophthalmology—on its own—does not provide a sufficient foundation rendering the opinions she expresses reliable.  Frazier, 387 F.3d at 1261 (explaining an expert may be qualified by experience, but this "does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express"); Quiet Tech., 326 F.3d at 1341 ("[W]hile an expert's overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability.").  Conclusory assertions that and expert's opinions are based on her training and experience are insufficient to establish reliability.  Fed. Trade Comm'n v. Nat'l Urological Grp., Inc., No. 1:04-CV-3294, 2017 WL 6759868, at *41 (N.D. Ga. Oct. 10, 2017), aff'd, 786 F. App'x 947 (11th Cir. 2019); see also Dukes v. Georgia, 428 F. Supp. 2d 1298, 1315 (N.D. Ga. 2006) ("Dr. Greifinger does not specify what experiences or what standards he relied upon in making any of these determinations.  In order to find Dr. Greifinger's opinion testimony reliable and connected to scientific data, this court would need to take a leap of faith and rely on Dr. Greifinger's ipse dixit and assurance that his testimony is based on nationally accepted standards . . . .  Accepting Dr. Greifinger's experience alone as evidence of the reliability of his statements is tantamount to disregarding entirely the reliability prong of the Daubert analysis."), aff'd 212 F.

7

App'x 916 (11th Cir. 2006).  When an expert is relying on experience, the reliability requirement requires an expert to "explain how [her] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation omitted).  In other words, to admit Dr. Yan's opinion, she must be able to demonstrate a sufficient connection between her experience and the opinion she offers.

In her report, Dr. Yan states, "My opinions are formed on the basis of my review of the medical records and on my training and experience in Vitreo-Retinal Diseases and Surgery." Doc. 80-1 at 1.  The report contains no other explanation of Dr. Yan's methodology.  Based on this statement, Dr. Yan's methodology is that she is a qualified ophthalmologist and formed an opinion based on Plaintiff's records.  This is, at its core, *ipse dixit*.  While review of medical records was likely essential in a case like this, it is not alone sufficient to demonstrate a reliable methodology.[2]  While Dr. Yan's experience may be extensive, invoking that experience on its own is not enough to demonstrate a reliable methodology.  As the proponent of the expert testimony, Defendants (and Dr. Yan) are required to demonstrate a sufficient connection between Dr. Yan's experience and her opinions.  Review Dr. Yan's opinions highlights the absence of any discernible connection.  Dr. Yan opines the first injury was likely not associated with permanent vision loss, while the second injury was.  But it is unclear exactly how being an ophthalmologist would lead one to that conclusion.  Dr. Yan also opines on how Plaintiff's injuries, treatment, and condition would likely progress, but, again, it is unclear how Dr. Yan

---

[2]     To be clear, Dr. Yan was not required to examine Plaintiff in order to offer an expert opinion on his injuries.  See, e.g., Geyer v. NCL (Bahamas) Ltd., 203 F. Supp. 3d 1212, 1217 (S.D. Fla. 2016) (denying motion to exclude based on medical expert's review of medical records without physical examination).

reaches those opinions based solely on her experience.  Ultimate, Dr. Yan's report is completely silent on the connection between her experience and her opinions.

Defendants argue Dr. Yan's opinions are reliable because they are supported by the evidence.  Doc. 83 at 4.  The implication of Defendants' argument is the opinions are reliable because they are correct—a proposition which Plaintiff disputes.  Doc. 88.  The accuracy or correctness of Dr. Yan's ultimate opinions are not germane to their reliability under Daubert. Seamon, 813 F.3d at 988 (explaining the reliability analysis must "focus solely on principles and methodology, not on the conclusions that they generate.").  For this reason, Defendants' reliance on Kennedy v. Electric Insurance Company, CV 4:18-148, 2019 WL 2090776, at *3–4 (S.D. Ga. May 13, 2019), is misplaced.  While this Court in Kennedy considered whether the expert's conclusions were supported by facts in the record, that was in response to defendant's argument the expert's testimony should be excluded because it was premised on inadequate or inaccurate factual foundation.  Id. at *3.  Here, Plaintiff does not bring a similar challenge and, instead, asserts Dr. Yan's opinion is unreliable because she does not connect her experience to her opinions, as is required under Daubert when the expert bases an opinion on experience.  Further, in Kennedy, the Court explicitly found the expert "thoroughly explains in his report the bases for his opinions."  Id.

While Dr. Yan summarizes medical records and states she applied her experience in reaching her opinion on the cause of Plaintiff's eye injuries, she does not explain how her experience supports these conclusions.  Dr. Yan fails to explain why her experience is a sufficient basis for her opinion and how that experience was reliably applied.  Defendants have not met their burden of establishing reliability, as Dr. Yan's report is totally devoid of any connection between her experience and her opinion.  Dukes, 428 F. Supp. 2d at 1315; see also

<u>Anderson v. Columbia County</u>, No. CV 112-031, 2014 WL 8103792, at *11 (S.D. Ga. Mar. 31, 2014) (excluding an expert physician because he did not connect his experience to his opinions); <u>Thomas v. Hubtex Machinebau GmbH & Co KG</u>, No. 7:06-CV-81, 2008 WL 4371977, at *7 (M.D. Ga. Sept. 23, 2008) (excluding an expert's opinion when he asserted causation opinion was based on literature he reviewed and his experience and formalized training but did not explain how his experience and training led to the conclusions he reached); <u>Simon v. Healthsouth of Sarasota Ltd. P'ship</u>, No. 8:12-CV-236, 2021 WL 268496, at *5 (M.D. Fla. Jan. 27, 2021) (excluding an expert physician where "he fails to identify specific experiences or medical standards he relied on" in forming his opinion); <u>Cosseboom v. Royal Caribbean Cruises Ltd.</u>, No. 1:20-cv-20343, 2020 WL 9071566, at *3 (S.D. Fla. Dec. 16, 2020) (explaining if a doctor is going to rely on his experience, "Rule 702 requires him to explain how that experience is reliably applied to his opinions and the facts").[3]

Because Defendants and Dr. Yan have failed to identify a reliable methodology for Dr. Yan's opinions, namely a sufficient connection between her experience and her opinions, her testimony should be excluded.

## C.    Defendants' Other Arguments are Unpersuasive

Defendants argue Plaintiff is using a <u>Daubert</u> motion to "circumvent the adversarial process" and, thus, Dr. Yan's opinion should not be excluded.  Doc. 83 at 6.  Defendants are

---

[3]    Moreover, Dr. Yan appears to base her opinion almost exclusively on the temporal relationship between Plaintiff's assaults and his symptoms, as described in medical records, in forming her opinion about which assault causes his injuries.  Generally, a temporal relationship between an incident and symptoms, alone, is not a sufficient basis or methodology under <u>Daubert</u> to support a causation opinion. <u>See</u> <u>McClain v. Metabolife Int'l, Inc.</u>, 401 F.3d 1233, 1243 (11th Cir. 2005) ("Drawing a [causation] conclusion from temporal relationships leads to the blunder of the post hoc ergo propter hoc fallacy[, which] assumes causality from temporal sequence . . . .  It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship.").

correct <u>Daubert</u> does not replace cross-examination and presentation of contrary evidence. However, the Eleventh Circuit has explained this to mean a district court should avoid weighing evidence and making credibility determinations. <u>Quiet-Tech</u>, 326 F.3d at 1341. The Court has not considered whether Dr. Yan's opinions are persuasive, nor has Plaintiff argued the Court should. Instead, the Court has endeavored to "conduct an exacting analysis of the proffered expert's methodology," as it must. <u>Id.</u> (citing <u>McCorvey v. Baxter Healthcare Corp.</u>, 298 F.3d 1253, 1256 (11th Cir. 2002)).

Defendants assert the circumstances in this case weigh in favor of admitting Dr. Yan's testimony because Plaintiff chose not to depose Dr. Yan. Plaintiff's decision on whether to depose Dr. Yan is immaterial. Defendants, as the parties seeking to offer Dr. Yan as an expert, bear the burden of showing her opinion is admissible and must do so by a preponderance of the evidence. <u>Allison</u>, 184 F.3d at 1306. While a deposition may or may not have been helpful to Defendants in establishing Dr. Yan's methodology, there is no requirement Plaintiff depose her. Plaintiff's decision on whether to depose Dr. Yan did not prevent Defendants from introducing other evidence establishing Dr. Yan employed a reliable methodology, such as an affidavit or declaration from Dr. Yan.

Finally, Defendants argue excluding Dr. Yan's testimony because of any inconsistencies between her opinion and Plaintiff's vision loss would be an unfair result given the late disclosure of additional medical records. As explained above, the undersigned takes no position on the merits of Dr. Yan's opinion on Plaintiff's vision loss. To be clear, the fact Dr. Yan opined Plaintiff's eye injury would be "self-limiting," but then actually did become worse, has no bearing on whether Dr. Yan connected her experience to her opinion. Further, Defendants requested and received an extension because of a delay in obtaining Plaintiff's medical records.

Doc. 74.  This extension was granted for the express purpose of reviewing Plaintiff's recently disclosed medical records.  Id.  Even though the Court granted the extension, there is no indication Defendants used that time to have Dr. Yan review the records and amend her opinion.[4]  If Defendants felt prejudiced by the timing of Plaintiff's disclosures, they were free to bring the issue before the Court, but they did not.  And given the extension Defendants were granted, their argument about any prejudice resulting from tardy disclosures is unconvincing.

In sum, Dr. Yan's opinions are based on her experience as an ophthalmologist.  However, Dr. Yan does not connect her opinion on Plaintiff's vision loss with her experience; she does not explain how her experience in ophthalmology "leads to the conclusion reached, why that experience is a sufficient basis for the opinion and how that experience is reliably applied to the facts."  Frazier, 387 F.3d at 1261 (citation omitted).  It was Defendants' burden to establish her opinion was reliable by connecting her experience to that opinion.  Defendants have failed to do so.  Accordingly, I **GRANT** Plaintiff's Motion.  Dr. Yan is prohibited from testifying at trial.[5]

## II.     Defendants' Challenge to the Testimony of Plaintiff's Treating Physicians

Defendants challenge Plaintiff's treating physicians, Dr. Diego Espinosa and Dr. Dilip Thomas, who Plaintiff plans to have testify as non-reporting expert witnesses.  Docs. 81-1, 86.  Dr. Espinosa and Dr. Thomas both treated Plaintiff while he was incarcerated.  Dr. Espinosa and Dr. Thomas both provided expert disclosures pursuant to Federal Rule of Civil Procedure

---

[4]     While the Court will not address the accuracy or correctness of Dr. Yan's opinion, the opinions in her written report—the only opinions before the Court—are plainly based on incomplete medical records. To the extent Dr. Yan's opinions in this case are based on her experience and review of Plaintiff's medical records, even that approach is unreliable, given that she did not conduct a complete review of the records before forming those opinions.

[5]     Because Dr. Yan's methodology is insufficient under Daubert, the Court declines to address Plaintiff's argument Dr. Yan's opinions are not helpful.

26(a)(2)(C), identifying themselves as treating physicians expected to testify at trial.[6]  Docs. 81-2, 81-3.

Defendants seek to prohibit Dr. Espinosa and Dr. Thomas from testifying on Plaintiff's alleged PTSD and mental health issues, the cause of Plaintiff's eye injuries, and the potential likelihood Plaintiff's condition will worsen and whether complications will arise (i.e., prognosis).[7]  Id. at 2.  Defendants seek to prohibit Plaintiff's treating physicians from offering opinions unrelated to their direct diagnoses and treatment of Plaintiff because no disclosure was made under Federal Rule of Civil Procedure 26(a)(2)(B).  Id. at 11.  However, they do not challenge Dr. Espinosa and Dr. Thomas' ability to testify about their firsthand observations and treatment of Plaintiff.  Defendants also raise challenges regarding whether the doctors' opinions are sufficiently precise and whether the opinions are based on *ipse dixit*.  Plaintiff filed a Response to Defendants' Motion, opposing some portions of Defendants' request to exclude testimony on causation and prognosis.  Doc. 84.

A.   **Legal Standard**

"A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party."  Williams v. Mast Biosurgery USA, Inc., 644 F.3d 1312, 1317 (11th Cir. 2011) (quoting Davoll v. Webb, 194 F.3d 1116, 1138 (10th Cir. 1999)).  Daubert does not apply to such testimony.  However, "once the treating physician expresses an opinion unrelated to treatment which is 'based on scientific,

---

[6]      There is no challenge to the adequacy of the Rule 26(a)(2)(C) disclosures.

[7]      Defendants also argue Dr Espinosa and Dr. Thomas should not be treated as reporting experts under Federal Rule of Civil Procedure 26(a)(2)(B) because they are treating physicians and did not otherwise provide an expert report.  Doc. 81-1 at 5–8; Doc. 84 at 3.  Plaintiff agrees.  Therefore, the Court will treat Drs. Espinosa and Thomas a non-reporting experts and analyze their ability to testify accordingly.

technical, or other specialized knowledge,' that witness is offering expert testimony for which the court must perform its essential gatekeeping function as required by Daubert."  Wilson v. Taser Int'l, Inc., 303 F. App'x 708, 712 (11th Cir. 2008) (citing United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) (finding a treating physician's opinion on causation was expert testimony because "his opinion regarding the cause of [plaintiff's] injuries was not needed to explain his decision making process, nor did it pertain to [plaintiff's] treatment")).

In other words, "when a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony, and it must comply with the requirements of Rule 702 and the strictures of Daubert."  Williams, 644 F.3d at 1317–18 (finding the identity of a foreign substance removed from the plaintiff's body "was not necessary for her treatment" and, therefore, was not admissible as lay testimony by a treating physician); Henderson, 409 F.3d at 1300 ("[The treating physician's] diagnosis of the injury itself . . . would be permissible lay testimony, but her statement about the cause of the injury was . . . a 'hypothesis'" because "[she] did not need to determine how [plaintiff] was injured to treat him in this case.").

### B.    PTSD and Mental Health Testimony

Plaintiff does not oppose Defendants' request Drs. Espinosa and Thomas be prohibited from testifying about PTSD, as Plaintiff does not plan to elicit such testimony from them. Doc. 84 at 2.  Accordingly, the Court **GRANTS as unopposed** these portions of Defendants' Motion.  Dr. Thomas and Dr. Espinosa are prohibited from testifying on Plaintiff's alleged PTSD or other mental health issues.

### C.      Causation Testimony

Defendants argue Drs. Espinosa and Thomas should be prohibited from offering testimony on the cause of Plaintiff's injury because causation is an area typically reserved for reporting expert witnesses and outside the scope of permissible treating physician testimony, as the opinions are not based on their treatment of Plaintiff.  Doc. 81-1 at 16.  Specifically, Defendants seek to preclude Dr. Espinosa from testifying that Plaintiff's injuries occurred on a specific date or because of a specific trauma, including a specific assault.  Doc. 86 at 3. However, Defendants do not challenge Dr. Espinosa testifying that Plaintiff's injuries are consistent with recent trauma, generally, which is consistent with Dr. Espinosa's opinion formed during treatment of Plaintiff and Dr. Espinosa's deposition testimony.[8]  Id.; Doc. 86 at 2.

Plaintiff largely agrees with Defendants about the limitation on Drs. Espinosa and Thomas' testimony but asserts any order is unnecessary and would unnecessarily limit their testimony.  Doc. 84 at 3–4.  Further, Plaintiff argues Dr. Espinosa's causation opinion—that Plaintiff's injuries were the result of recent trauma—is not so imprecise or unspecific as to warrant its exclusion.

### 1.      Dr. Espinosa.

Dr. Espinosa made no specific findings on the cause of Plaintiff's eye injury, a choroidal rupture.  Doc. 81-4 at 10–11, 21, 23.  Dr. Espinosa determined Plaintiff had a choroidal rupture, which is generally caused by trauma, and Plaintiff's injury was consistent with recent trauma. Doc. 81-4 at 10–11.  Defendants do not dispute Dr. Espinosa's ability to offer such testimony. Doc. 86 at 2.  Thus, Dr. Espinosa may testify Plaintiff's choroidal rupture was the result of recent trauma, consistent with other applicable law and Rules.

---

[8]      Defendants' challenge arises largely from the fact Plaintiff's Rule 26(a)(2)(C) disclosures contained broad descriptions of the doctors' expected testimony.  See Docs. 81-2, 81-3.

Defendants assert Dr. Espinosa should not be allowed to offer testimony on the precise date on which Plaintiff's eye injury occurred or what trauma caused Plaintiff's injury.  Doc. 81-4 at 11.  Plaintiff concedes such testimony is impressible.  Accordingly, Dr. Espinosa cannot offer an opinion about the specific date on which Plaintiff's injuries occurred, which assault caused Plaintiff's injuries, or even that it was caused by an assault.

### 2.  *Dr. Thomas.*

Defendants challenge Dr. Thomas' ability to offer causation testimony.  Specifically, Defendants seek to prohibit Dr. Thomas from testifying about causation because he could not determine when Plaintiff's double-vision occurred (i.e., the date).  Plaintiff concedes Dr. Thomas should not be permitted to offer testimony about the date of the injury but argues Thomas should be allowed to testify the double vision was "caused by trauma."  Doc. 84 at n.2.  In their Reply, Defendants do not address Dr. Thomas' ability to testify that trauma, generally, caused Plaintiff's double-vision.

Dr. Thomas is excluded from testifying about the cause of Plaintiff's double-vision in terms of date, and this portion of Defendants' Motion is **GRANTED as unopposed**.  However, the Court declines to address whether Dr. Thomas may testify that Plaintiff's double-vision was caused by trauma generally.

In sum, Defendants' Motion is **GRANTED as unopposed** insofar as it seeks to prohibit Dr. Espinosa and Dr. Thomas from testifying on the date which Plaintiff's injury occurred and whether (or which) assault caused Plaintiff's injury.  However, this Order does not prevent Dr. Espinosa from explaining Plaintiff's choroidal rupture is the result of trauma generally.  That is,

Dr. Espinosa can testify Plaintiff's injuries were the result of recent trauma, but he and Dr. Thomas cannot testify Plaintiff sustained the injuries on any particular date.[9]

### D.        Prognosis Testimony

Defendants seek to prohibit Dr. Espinosa and Dr. Thomas from offering testimony on the likelihood Plaintiff's eyesight will worsen in the future or that he will develop further complications from his injuries, i.e., Plaintiff's prognosis.  Doc. 81-1 at 17–18; Doc. 86 at 3–4. Defendants argue prognosis opinions are the province of reporting expert witnesses, and non-reporting treating physicians should not be permitted to offer such testimony.

Plaintiff states he does not intend to solicit prognosis testimony from Dr. Thomas.  Doc. 84 at 10 n.5.  Because Plaintiff states he does not intend to solicit prognosis testimony from Dr. Thomas, this portion of Defendants' Motion is **GRANTED as unopposed** without further analysis.  Dr. Thomas is prohibited from offering prognosis testimony, including testifying on whether Plaintiff's condition or injuries will worsen or whether further complications will arise. However, Dr. Thomas is permitted to offer fact-witness testimony, including on his current treatment of Plaintiff, to the extent any exists.

Regarding Dr. Espinosa, Defendants contend all prognosis testimony regarding whether Plaintiff's condition will worse and whether complications will arise should be excluded because Dr. Espinosa has not observed deterioration or complications and there was no Rule 26(a)(2)(B) expert report.  Additionally, Defendants argue Dr. Espinosa should not be allowed to offer

---

[9]     Plaintiff suggests Defendants are trying to put unnecessary limits on Dr. Espinosa and Dr. Thomas' testimony and limit their testimony to a short statement.  Doc. 84 at n.1.  However, nothing in this Order should be read to put such limits on Drs. Espinosa and Thomas' testimony or prescribe precise language which they must use when testifying.  This Order does not preclude Drs. Espinosa or Thomas from expounding on permitted topics.  Instead, this Order simply prohibits Drs. Espinosa and Thomas from testifying Plaintiff sustained his injuries on any particular date or from any particular trauma.

testimony on prognosis because it is imprecise and unspecific.  Further, they assert any testimony Dr. Espinosa offers about a risk of future deterioration is mere *ipse dixit*.

On the other hand, Plaintiff argues Dr. Espinosa formed his prognosis opinions in the scope of treating Plaintiff, and, therefore, he is permitted to testify on this topic, even though he did not provide a Rule 26(a)(2)(B) report.  Doc. 84 at 10.  Further, Plaintiff contends Dr. Espinosa offers testimony about how choroidal ruptures worsen over time and his testimony was not imprecise or unspecific.

"[A] treating physician may testify as a lay witness about . . . the individual's prognosis as long as those opinions are based on his or her personal observations during the course of treatment of the individual rather than as part of litigation preparation, and as long as those opinions were necessary for his or her treatment of the induvial."  Robles v. Costco Wholesale Corp., No. 8:18-cv-1453, 2019 WL 11505075, at *3 (M.D. Fla. July 26, 2019) (citing Henderson, 409 F.3d at 1300; In re Am. Airlines Flight 331, No. 1:10-cv-20131, 2013 WL 12340490, at *3 (S.D. Fla. Sept. 3, 2013); and Bryan v. Whitfield, No. 3:14-cv-341, 2015 WL 3407485, at *3 (N.D. Fla. Mar. 16, 2015)); Levine v. Wyeth Inc., No. 8:09-cv-854, 2010 WL 2612579, at *1 (M.D. Fla. June 25, 2010).

However, a treating physician may not testify as a lay witness about opinions that are not based on her personal observations or that go beyond those arising from her treatment of the individual.  Robles, 2019 WL 11505075, at *4 (citing Williams, 644 F.3d at 1317–18; and Henderson, 409 F.3d at 1300).  If a treating physician's testimony is based on a hypothesis or conjecture and not her personal observations or the experience of treating the individual, it crosses the line from lay to expert testimony.  Id. (citations omitted).

Plaintiff seeks to have Dr. Espinosa testify he is continuing to treat and monitor Plaintiff for further complications and deterioration and determine whether additional treatment is needed. Doc. 84 at 10 (citing Doc. 84-4 at 7).  Plaintiff has demonstrated Dr. Espinosa monitoring Plaintiff for further complications is part of his treatment of Plaintiff.  Testimony about ongoing monitoring (i.e., the circumstances of the actual ongoing monitoring program, such as frequency and methods of examination) is plainly fact-witness testimony and not expert testimony, and Dr. Espinosa explains as much in his deposition.  Doc. 84-4 at 7.  Thus, Dr. Espinosa is permitted to testify about his continued monitoring of Plaintiff's condition as a fact witness, subject to other applicable Rules of Evidence.

Additionally, Dr. Espinosa is permitted offer testimony about whether Plaintiff's condition will worsen or deteriorate in the future and whether Plaintiff is likely to experience complications from his injuries, without submitting a Rule 26(a)(2)(B) report because he developed these prognosis opinions while treating Plaintiff.  Williams v. Mast Biosurgery USA, Inc., 644 F.3d 1312, 1317 (11th Cir. 2011) (explaining treating physicians may testify as to their "personal knowledge, including the treatment of the party"); Bryan, 2015 WL 3407485, at *5. Indeed, Dr. Espinosa's continued monitoring of Plaintiff's condition is precisely because of his concerns Plaintiff's condition may worsen or deteriorate further.  That is, Dr. Espinosa's opinions about Plaintiff's prognosis were developed during treatment and not specifically for the purposes of the litigation, and, therefore, he is permitted under Rule 26 to testify on those topics as long as he provided a Rule 26(a)(2)(C) disclosure, which he did.  See, e.g., Guffey v. Dillard's, Inc., No. 3:14-CV-1469-J-32JBT, 2015 WL 12844949, at *3 (M.D. Fla. Dec. 29, 2015) (concluding treating physicians may testify on causation, prognosis, and other matters without providing a Rule 26(a)(2)(B) report, so long as the opinions are formed during the course

of treatment).  While Dr. Espinosa's opinions on Plaintiff's prognosis may constitute expert opinion testimony subject to Rule 702 and Daubert, Dr. Espinosa was not required to provide a Rule 26(a)(2)(B) report in order to testify on these topics.

Defendants also argue Dr. Espinosa's prognosis opinions should be excluded because the opinions are imprecise and unspecific, as he testified at deposition vision loss from a choroidal rupture is typically static and not expected to worsen and complications are rare.  Doc. 86 at 4. However, Dr. Espinosa acknowledging further deterioration or complications are rare in a case like Plaintiff's is not imprecise or unspecific; instead, it is a specific statement about likelihood and one that is helpful to the jury.  That is, just because the likelihood of further deterioration or complications are rare is not a reason to exclude his testimony.  Defendants are free to cross-exam Dr. Espinosa on his opinions.  Exclusion is not appropriate simply because Dr. Espinosa previously testified about a low likelihood of future complications.  See Daubert, 509 U.S. at 596 (explaining "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

Finally, Dr. Espinosa's opinion on deterioration or complications is not the result of *ipse dixit*.  At his deposition, Dr. Espinosa explained in detail Plaintiff's medical condition, how the condition could worsen over time, and Plaintiff's vision has not stabilized and could continue to decrease in the future.  Doc. 81-4 at 6–7, 11, 20–21.  In sum, at deposition, Dr. Espinosa provided a detailed explanation about how he reached his conclusions on prognosis and how those conclusions are based on his specialized knowledge in the field; thus, such opinions are not *ipse dixit*.

Accordingly, to the extent Defendants seek to have Dr. Espinosa's testimony on his continued monitoring of Plaintiff's condition or whether Plaintiff's condition will worsen or whether complications will arise excluded, their motion is **DENIED**.  However, to be clear, Dr. Espinosa's testimony on these topics is limited to facts he observed first-hand and opinions he formed during the course of treating Plaintiff.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Exclude an Opinion of Defendants' Expert Witness Dr. Jiong Yan.  Doc. 80.  Further, the Court **GRANTS in part as unopposed** and **DENIES in part** Defendants' Motion to Exclude in Part Expert Witness Testimony.  Doc. 81.

**SO ORDERED**, this 19th day of July, 2021.


_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA